UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHELLY JEAN SPEARS,

               Plaintiff,

     v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

               Defendant.

Case No. C17-5550 RAJ

**ORDER REVERSING AND REMANDING THE CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff, Shelly Jean Spears, seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the ALJ erred in evaluating two medical opinions and her own testimony, and in applying the Medical-Vocational rules. Dkt. 11 at 1. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 54 years old, has a high school education and has worked as a waitress, child monitor, and newspaper carrier. Tr. 31-32. On April 17, 2014, plaintiff applied for benefits, alleging disability as of October 15, 2011. Tr. 17. Plaintiff's applications were denied initially and on reconsideration. *Id*. After the ALJ conducted a hearing on January 19, 2016, the ALJ issued a decision finding plaintiff not disabled. Tr. 17-33.

ORDER REVERSING AND REMANDING
THE CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the application date, April 17, 2014.

**Step two:** Plaintiff has the following severe impairments: degenerative disc disease with stenosis and radiculopathy, lumbar spondylosis, peripheral neuropathy, obesity, possible conversion reaction, anxiety, personality disorder, and major depressive disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform light work, further limited to standing or walking two hours at a time or four hours total in a workday and sitting two hours at a time; no climbing ladders, ropes, or scaffolds; only occasional balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs; no concentrated exposure to extreme cold, or vibration. Plaintiff is further limited to low stress work, meaning no hazards; simple, routine tasks; no more than occasional, superficial interaction; adaptation to no more than simple or minor changes in the work setting or work process.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that plaintiff can perform, plaintiff is not disabled.

Tr. 19-33. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

## DISCUSSION

Plaintiff contends the ALJ erred by failing to find the Medical-Vocational rules mandated a finding of disability, discounting her testimony, and giving little weight to the opinions of two examining medical sources.

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

## A. Medical-Vocational Rules

Plaintiff argues that the limitation to four hours of standing or walking transforms her RFC from light to sedentary. She argues the ALJ thus erred in using the Medical-Vocational rules only as a "framework" (*see* Tr. 32) instead of finding that they direct a conclusion of disability. Dkt. 11 at 11-12.

If one of the Medical-Vocational rules matches the claimant's situation precisely, that rule "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). If no rule matches precisely, then the rules can still be used as a framework. *Id.* Plaintiff cites to agency guidelines that only apply when the Medical-Vocational rules are merely a framework. *See* POMS DI 25025.015 (guiding ALJ in making adjudicative judgments when a claimant's RFC falls between two exertional levels); SSR 83-14, available at 1983 WL 31254, *4 (guiding ALJ when RFC combines exertional and nonexertional limitations). Thus these citations are simply irrelevant to determining whether the Medical-Vocational rules are mandatory in a particular case.

The Medical-Vocational rules are mandatory when a claimant's age, education, work experience, and RFC "coincide with all of the criteria of a particular rule…." 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(a). Where any one of these factors "does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case and, accordingly, does not direct a conclusion of disabled or not disabled." *Id.* The rules may still "provide an overall structure for evaluation" and "guidance for decisionmaking" however. *Id.* at § 200.00(d).

There is no dispute that the RFC in the ALJ's decision falls between the sedentary and light exertional levels. Thus plaintiff's situation coincides with no Medical-Vocational rule, and the rules do not direct a conclusion as to disability. "When the [Medical-Vocational rules] do

not match the claimant's qualifications, the ALJ can either (1) use the [rules] as a framework and make a determination of what work exists that the claimant can perform, see Soc. Sec. Ruling 83–14, 1983 WL 31254 (S.S.A.), or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The Court concludes the ALJ did not err by finding the Medical-Vocational rules were not mandatory, and in relying on vocational expert testimony.

Plaintiff cites a Ninth Circuit opinion for the proposition that "when there is a significant reduction in exertion the ALJ should consult a lower exertion rule first before taking VE testimony." Dkt. 11 at 12 (citing *Lounsburry v. Barnhart*, 468 F.3d 1111, 1116 (9th Cir. 2006)). But that is not what the case held. *Lounsburry* did not involve a claimant whose exertional level fell between two levels. *See* 468 F.3d at 1117 ("residual functional capacity to perform light work"). Plaintiff's argument fails.

**B.      Examining Medical Source Opinions**

If contradicted, as here, an examining medical source's opinion may be rejected only if the ALJ provides specific and legitimate reasons supported by substantial evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

**1.      Kimberly Wheeler, Ph.D.**

Dr. Wheeler opined that plaintiff had "marked" limitations with attendance, requesting assistance, planning independently, performing effectively and maintaining appropriate behavior in a work setting. Tr. 301. The ALJ gave her opinion "some weight" only, because the marked limitations were based on plaintiff's self-reports and were inconsistent with plaintiff's treating provider's notes. Tr. 29-30.

An ALJ may discount a medical source's opinion that is based to a large extent on a claimant's properly discredited self-reports. However, "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). The Ninth Circuit explained that "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Id.* When a mental health opinion is not more heavily based on self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162. And an ALJ does not provide clear and convincing reasons for rejecting an examining doctor's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports the ultimate opinion with her own observations. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008) (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)).

Dr. Wheeler did not discredit plaintiff's complaints, and supported her opinions with extensive observations and testing. Her observations included plaintiff crying through much of the interview, deeply depressed mood and blunted affect, and thought content that was morose, sorrowful, guilty, and reflected low self-esteem. Tr. 302. She performed a clinical interview and a mental status examination. Tr. 299-303. Testing results indicated poor concentration, sluggish mentation, and poor judgment. Tr. 303. Dr. Wheeler of course reported what plaintiff said but applied her own judgment, including pressing plaintiff multiple times for further information and detail to examine plaintiff's mental functioning. *See*, *e.g.*, Tr. 299 ("She says her partner is 'awesome, he's wonderful to me,' which is wholly at odds with the sobbing, no-self-esteem

depression in my office."). The Court concludes the ALJ erred in discounting Dr. Wheeler's opinion on the grounds that she relied heavily on plaintiff's self-reports.

The ALJ found plaintiff's crying in Dr. Wheeler's examination to be inconsistent with normal psychological signs and not crying in most of her monthly visits to her treatment provider, Daryl Conklin, PA-C. Tr. 30. No psychological examinations were performed regularly, although the provider did note when plaintiff was tearful. Tr. 308-345, 360-400. Because Dr. Wheeler pressed plaintiff hard on very sensitive, emotional topics such as her children's refusal to let her see her grandchildren, it is unsurprising that plaintiff cried more there than at monthly visits addressing primarily physical problems. And still, plaintiff was tearful at several of her monthly visits. Tr. 324, 327, 384.

The Court concludes the ALJ erred in discounting Dr. Wheeler's opinions.

### 2. Alexander Patterson, Psy.D.

Dr. Patterson opined that plaintiff had severe impairments in adaptation skills, attendance and timeliness, completing tasks, managing stress, and work relationships. Tr. 358. The ALJ gave Dr. Patterson's opinion "little weight" because plaintiff had told him she last worked in 2004 instead of 2014 and he relied heavily on plaintiff's self-reported symptoms. Tr. 31.

Dr. Patterson did not discredit plaintiff's complaints, and supported his opinions with his own observations, including plaintiff's "too casual" clothing, depressed mood, and tearful affect. Tr. 356. Dr. Patterson also reported testing results, including difficulty with tasks such as serial sevens and threes. Tr. 357. While Dr. Patterson of course reported what plaintiff told him, he also performed a mental status exam and clinical interview. For example, while Dr. Patterson said plaintiff reported difficulty with focus, he also observed that she had "difficulty with focus/concentration tasks on the mental status exam." Tr. 357. The record shows his opinions

reflect his assessment following a professional mental health examination.

However, plaintiff's failure to disclose her recent work undermined Dr. Patterson's opinions. His conclusions as to her functional abilities may have differed if he knew she had recently been capable of full-time work. The ability to go to work day after day, week after week, for years is highly probative of her ability to sustain employment. Because Dr. Patterson lacked that information, the ALJ permissibly discounted his opinion.

## C. Plaintiff's Testimony

Where, as here, an ALJ finds that a claimant has established underlying impairments that may reasonably be expected to cause the alleged symptoms and there is no affirmative evidence of malingering, the ALJ may reject plaintiff's testimony about the severity of his symptoms only "by offering specific, clear and convincing reasons" supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (2017).

Plaintiff argues the ALJ erred in rejecting her testimony regarding sleep and fatigue problems, reluctance to leave home, and staying in pajamas some days when she was "unable" to be around people. Dkt. 11 at 14. Plaintiff argues the ALJ did not refute these specific symptoms. Dkt. 11 at 15. However, the ALJ discounted plaintiff's testimony by making a generalized credibility determination, not a symptom-by-symptom determination; either approach is permissible. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (reversing and remanding because "the ALJ failed to articulate an acceptable reason either for disbelieving Light's testimony in general or for discrediting his pain testimony specifically").

The ALJ discounted plaintiff's testimony regarding her mental health for numerous reasons. Tr. 23-29. As discussed further below, the Court concludes that little propensity to work, lack of mental health treatment, daily activities, and exaggerating pain were erroneous

reasons. However, legally sufficient reasons were working after alleged onset of disability, inconsistency with medical evidence, and inconsistent statements. Failure to report earnings, though it would be insufficient standing alone, was a legitimate additional reason.

### 1. Erroneous Reasons

The ALJ's finding of little propensity to work contradicts his finding of working after alleged onset of disability, and is not supported by substantial evidence. The records the ALJ cites in support show that plaintiff worked fairly continuously from 1980 to 1987, 1999 to 2004, and 2010 to 2013. Tr. 167. Nearly two decades of full time employment does not demonstrate little propensity to work.

The lack of mental health treatment is not a clear and convincing reason to discount plaintiff's testimony because Dr. Wheeler found that plaintiff has "a poor grasp of medical coverage, options, etc., might not be making use of full resources" and feels "a lot of guilt, so comes across almost as if she believes she deserves to feel this bad." Tr. 299, 302. The ALJ did not address these highly relevant potential explanations for why plaintiff failed to seek further treatment. Plaintiff "may have failed to seek psychiatric treatment for [depression], but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

The ALJ's finding that plaintiff reported greater average pain to a disability examiner in 2012 than to her treating physical therapist in 2013 also cannot support discrediting plaintiff's testimony. *Compare* Tr. 265 (pain "averaging 8 or 9/10") *with* Tr. 276 (pain "4/10 on a constant basis").[4] The 2013 report states that "patient has a perceived global rating of change as about

---

[4] These are presumably without medication. The ALJ noted that "with medications her pain was

30%. Her pain levels are still about 4/10 on a constant basis and 7/10 when it is at its worst." Tr. 276. In other words, plaintiff reported a substantial improvement in pain levels, consistent with a difference between the 2012 and 2013 reports.

An ALJ may discredit a claimant's testimony if it is contradicted by her daily activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). But here, the ALJ failed to explain what he found contradictory. The ALJ summarized plaintiff's allegations as follows: she can only sit 15 minutes, walk 1.5 blocks, lift a small load of laundry, and climb stairs with assistance; she has terrible depression and anxiety; she has difficulty being around the public and is often unable to get out of bed. Tr. 23. The ALJ found these allegations inconsistent with living alone, performing personal care and hygiene, preparing salads, sandwiches or microwavable meals, performing household chores, driving, shopping once a month, handling funds, going to church, and thoroughly cleaning her house weekly. Tr. 27-28. Hobbies included sewing, drawing, watching television, spending time with grandchildren, making quilts, gardening and spending time with family and her boyfriend, and she took a vacation. Tr. 28. The ALJ never identified what activities contradicted what testimony. The Court cannot speculate as to the ALJ's reasoning. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (a district court cannot substitute its conclusions for the ALJ's or speculate as to the grounds for the ALJ's conclusions).

The ALJ also found that plaintiff "provided internally inconsistent reports and presentation to Dr. Wheeler" but does not explain what is inconsistent. Tr. 27. A review of Dr. Wheeler's report shows no obvious inconsistencies. Tr. 299-303.

---

between 1 and 3 out of 10." Tr. 27 (citing Tr. 332).

### 2. Permissible Reasons

The ALJ found that plaintiff worked after the alleged October 2011 onset date of disability, delivering newspapers and as a caregiver for her two grandchildren. Tr. 28. Plaintiff argues inaccurately that the ALJ concluded the work was not substantial gainful activity. Dkt. 11 at 15, 7 (citing Tr. 19). In fact, the ALJ found that plaintiff had not engaged in substantial gainful activity since the April 2014 *application* date, not the October 2011 onset date. Tr. 19. Plaintiff further argues that her childcare work was "minimal" because it merely involved "playing with her grandkids." Dkt. 11 at 15. Yet plaintiff testified she babysat twelve hours a day, four days a week. Tr. 50. She reported the children were three and eight years old, and she fed them, played with them, changed diapers, and would carry the 30-pound three-year-old when he wanted until the back pain worsened. Tr. 173. Twelve-hour days frequently lifting thirty pounds is more than minimal. *See* Tr. 173. The Court concludes the ALJ did not err in finding that working after the alleged disability onset date undermines plaintiff's symptom testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2010) (ALJ permissibly concluded that impairments that existed before completing a college degree and nurses' aide training are not disabling).

Inconsistency with the medical record is also a permissible reason to discount plaintiff's statements. Although an ALJ may not discredit a claimant's symptom testimony as unsupported by objective medical evidence once an underlying impairment has been established, a reviewing court "will not reverse credibility determinations of an ALJ based on" contradictions between testimony and medical evidence. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). While plaintiff argues that her testimony can be interpreted as consistent with Dr. Patterson's and Dr. Wheeler's mental health findings, she does not explain why the ALJ's interpretation of the entire

medical record as inconsistent with her testimony is erroneous.  Dkt. 11 at 15.  The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  For example, the ALJ noted that while plaintiff claimed she could not climb stairs without assistance, examinations consistently show normal strength, reflexes, range of motion, and other measurements in the lower extremities.  Tr. 23 (citing Tr. 197), 26 (citing Tr. 272-73, 297-98).  And while plaintiff reported "terrible" anxiety, she told a provider that clonazepam was "really doing well with her anxiety…."  Tr. 23 (citing Tr. 204), 27 (citing Tr. 390).  The Court concludes the ALJ did not err in discrediting plaintiff's allegations based on inconsistency with the medical record.

Inconsistent statements are a specific and convincing reason to discredit a claimant's testimony.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  Plaintiff's testimony that she stopped babysitting her grandchildren in early 2013 was inconsistent with her report to Dr. Wheeler that she stopped in early 2014.  Tr. 50, 300.  Similarly, her testimony that she stopped delivering newspapers before she began babysitting for three years (*i.e.*, early 2011 at the latest), was inconsistent with her report in October 2012 that she was still delivering newspapers.  Tr. 50, 56, 267.  Plaintiff's January 2016 testimony that she last drank alcohol "[t]hree years ago" is also inconsistent with a March 2014 report that she was drinking "maybe once a month."  Tr. 52, 300.  And her reports that she stopped using methamphetamines in 1990 or 2003 were inconsistent.  Tr. 300, 355.  Regardless of whether inaccuracies are intentional, the errors reduce the reliability of plaintiff's testimony.

Unreported earnings is a legitimate reason, though insufficient standing alone, to discount plaintiff's credibility.  *See Longmore v. Astrue*, 783 F. Supp. 2d 1130, 1136 (D. Or. 2011) (citing *Schow v. Astrue*, 272 F. App'x 647, 652 (9th Cir. 2008) ("The finding of unreported earnings is

proper for consideration, but hardly compels the adverse credibility finding.")). There is no dispute that plaintiff did not report earnings from newspaper delivery and waitressing work.

Together, these reasons are sufficient to discount plaintiff's testimony, and thus inclusion of erroneous reasons was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The Court concludes that the ALJ did not err in discounting plaintiff's allegations.

**D.     Scope of Remand**

Plaintiff requests remand for payment of benefits or, in the alternative, for further administrative proceedings. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Here, the Court finds that the record, as it stands, does not compel a finding of disability. Plaintiff argues that the vocational expert's testimony, matched up with Dr. Wheeler's opinions, would "support" a finding of disability. Dkt. 11 at 11. For example, when asked if an "individual would have to complete a normal workday" the vocational expert responded "Yes." Tr. 62. But this is not a precise match for Dr. Wheeler's opinion that plaintiff's impairments would have a "marked" effect on her ability to "[c]omplete a normal work day and work week

without interruptions from psychologically based symptoms." Tr. 301. The Court cannot speculate as to what ability level remains after a marked effect and what level the vocational expert would opine was tolerable. *See Brown-Hunter*, 806 F.3d at 492 ("A reviewing court may not make independent findings based on the evidence before the ALJ"). Accordingly, remand for further proceedings is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Dr. Wheeler's opinions, reassess the RFC as needed and proceed to step five as necessary.

DATED this 9th day of July, 2018.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge